
BERT D. GILDEN *v.* THE SINGER MANUFACTURING COMPANY

WYNNE, C. J., DALY, KING, MURPHY and BORDON, Js.

Argued February 6—decided March 4, 1958

*Dwight F. Fanton,* with whom was *Raymond E. Baldwin, Jr.,* for the appellant (defendant).

*Samuel Gruber,* for the appellee (plaintiff).

MURPHY, J.   The plaintiff, an employee of the defendant at its Bridgeport plant, was discharged on

October 9, 1956. At the time, a collective bargaining agreement between the defendant and Local 227, affiliated with the International Union of Electrical, Radio and Machine Workers, A.F.L.–C.I.O., recognized the union as the sole and exclusive bargaining agency for all production and maintenance employees. The plaintiff, as an employee as well as a member of the union, was a beneficiary of the contract. Both he and the union were notified of the reasons for discharge. He thereupon processed his claim that the discharge was not for proper and sufficient cause under the terms of the contract. Failing to obtain satisfaction from the works manager of the defendant under the final step of the grievance procedure, he sought to have his grievance arbitrated. He was informed that under the agreement individual employees were not entitled to arbitration. He then applied to the Superior Court for an order directing the company to arbitrate. From the order directing arbitration, the defendant has appealed.

Section 5 of the contract sets up the grievance procedure. Section 5 (f) provides in part: "After the receipt of a decision, if the aggrieved party or the Union does not take the grievance to the next higher Step or to arbitration . . . , the grievance shall be deemed to have been settled and shall not be subject to further appeal or to arbitration."

Section 6 (a), covering arbitration, reads: "Any grievance involving the interpretation, construction or application of the terms of this agreement which shall not have been satisfactorily settled under the grievance procedure may be taken either by the Union or the Company to arbitration . . . ." It is the defendant's contention that the right to arbitrate is governed exclusively by this section and that since the union has been impassive throughout the con-

troversy, the plaintiff's discharge is final. If this section could be considered without reference to the other sections of the agreement, there might be merit to such a claim. It is fundamental, however, that the contract must be taken as a whole and all its relevant provisions considered in connection with each other. *Baydrop* v. *Second National Bank,* 120 Conn. 322, 327, 180 A. 469.

Section 8 (b) of the contract provides in part: "Whenever a dispute with reference to a discharge alleged to be in violation arises, the arbitrator, upon a decision that the discharge was improper, shall . . . ." Reading § 6 (a) in conjunction with and not separate and apart from §§ 5 (f) and 8 (b), we concur with the trial court that the plaintiff was not foreclosed of arbitration by the language used in § 6 (a) and the failure of the union to act. In the determination of the effect of a written contract, the inquiry must be, not what the parties intended, but what is the intent expressed in the contract. *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 682, 102 A.2d 875.

There is no error.

In this opinion the other judges concurred.