MICHAEL J. PARANKO *v.* STATE OF CONNECTICUT
(12631)

PETERS, C. J., SHEA, SANTANIELLO, CALLAHAN and MORAGHAN, Js.

Argued February 11—decision released May 27, 1986

---

*Robert B. Teitelman,* assistant attorney general, with whom were *Charles A. Overend,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh,* assistant attorney general, for the appellant (state).

*Jeffrey W. Hill,* with whom, on the brief, was *Thomas B. Wilson,* for the appellee (plaintiff).

SANTANIELLO, J. The principal issue raised on this appeal is whether, under the specific terms of a collective bargaining agreement between the state and an employee union, General Statutes § 52-410[1] grants an

---

[1] "[General Statutes] Sec. 52-410. APPLICATION FOR COURT ORDER TO PROCEED WITH ARBITRATION. (a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law.

"(b) The complaint may be in the following form: '1. On . . . ., 19 . ., the plaintiff and the defendant entered into a written agreement for arbitration, of which exhibit A, hereto attached, is a copy. 2. The defendant has neglected and refused to perform the agreement for arbitration, although the plaintiff is ready and willing to perform the agreement. The plaintiff claims an order directing the defendant to proceed with an arbitration in compliance therewith.'

"(c) The parties shall be considered as at issue on the allegations of the complaint unless the defendant files answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the application, according to the rights of the parties."

individual union member standing to bring an action to compel the state to submit to arbitration. The plaintiff, Michael J. Paranko, an employee of the state and member of the Protective Services Employees Coalition IUPA/IAFF, AFL-CIO (union), brought an action in the Superior Court against the state to compel arbitration of a grievance. The complaint alleged that he had been unfairly demoted and that the union had refused to submit his grievance to arbitration. Relying on the terms of a collective bargaining agreement between the state and the union, he requested that the grievance be submitted to arbitration to determine the issue of arbitrability. The agreement provided in part that "individual employees may submit to arbitration [an unresolved grievance] in cases of dismissal, demotion or suspension of not less than five working days." The state filed a motion to dismiss arguing that the plaintiff was not a "party" to the agreement and that he could not therefore compel the state to arbitrate his grievance under General Statutes § 52-410. The trial court denied the state's motion, however, and ordered that a separate arbitrator be appointed to determine the issue of arbitrability. The state appeals assigning as error the court's denial of the motion to dismiss and the court's order compelling arbitration. We find no error.

The state's first claim is that the plaintiff is not a "party" to the collective bargaining agreement and, as a result, has no standing under General Statutes § 52-410 to compel arbitration. Section 52-410 (a) provides that: "*A party* to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court . . . for an order directing *the parties* to proceed with the arbitration in compliance with their agreement." (Emphasis added.) The issue before us then is a narrow one, namely,

whether the plaintiff was a "party" to the agreement within the meaning of the statute.[2]

General Statutes § 52-410 was enacted in 1929 as part of legislation designed to make arbitration a workable alternative to judicial settlement of disputes. See General Statutes (1930 Rev.) §§ 5840 through 5856; see generally note, "Judicial Interpretations and Applications of the Connecticut Arbitration Statutes," 7 Conn. L. Rev. 147, 148 (1974). Before these statutes were enacted, arbitration agreements were essentially unenforceable and a party could not petition the Superior Court to compel arbitration. See *First Ecclesiastical Society* v. *Besse,* 98 Conn. 616, 620–21, 119 A. 903 (1923); *Yale & Towne Mfg. Co.* v. *International Assn. of Machinists,* 15 Conn. Sup. 118, 120 (1947). The clear purpose of § 52-410 is to provide the "parties" to an arbitration agreement with an enforcement mechanism by permitting them to invoke the court's equitable powers. The statute limits the availability of the remedy to "parties," but the word is not defined. The term is used generically, referring to anyone who has contracted with another to arbitrate their disputes. The meaning must therefore be derived from the agreement itself. *McCaffrey* v. *United Aircraft Corporation,* 147 Conn. 139, 141–42, 157 A.2d 920, cert. denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736 (1960).

The state claims that under the collective bargaining agreement the only "parties" are itself and the union. In support of its argument, it relies on the wording of the agreement's preface and on the fact that the

---

[2] The state also argues that it did not waive its sovereign immunity as to the plaintiff's cause of action. The state has conceded, however, that if the plaintiff is a "party" to the written agreement for the purposes of General Statutes § 52-410, then sovereign immunity would not bar the plaintiff's action to compel arbitration. Because of our disposition of the definitional question under the statute, therefore, we do not address this additional claim.

contract was negotiated by the union and not by the individual employees. The state, however, ignores the important role of the individual employees in labor negotiations and oversimplifies the nature of the collective bargaining process. Employees may not take part individually in negotiating the collective bargaining agreement, the actual negotiations being conducted by their agent, the union. *Vaca* v. *Sipes,* 386 U.S. 171, 191–93, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967). The employees' interests are, however, represented by the agreement signed by the union on their behalf, and the agreement will often grant them the right individually to enforce certain provisions of the contract. They are in a broad sense, therefore, "parties" to the agreement. Some courts have likened the employees to third party beneficiaries. See *J. I. Case Co.* v. *N.L.R.B.,* 321 U.S. 332, 336, 64 S. Ct. 576, 88 L. Ed. 762 (1944); *Hudack* v. *Hornell Industries,* 304 N.Y. 207, 214, 106 N.E.2d 609 (1952). In our judgment, however, "it is a mistake to attempt to force agreements between labor unions and employers into more familiar legal pigeonholes such as usage, third party beneficiary contracts, or contracts negotiated by the union as agent for the employees as principals. The law has always had trouble with tripartite relationships; and in the labor field there are additional complications. The parties affected by a collective bargaining agreement are employer, union, and many individual employees. . . . [T]he labor union . . . is in a very real sense only . . . the individual employees . . . acting as an organized group through its agents and through constitutional processes. . . . Since experience offers no factual parallel to these arrangements, no other legal conception is quite analogous." Cox, "Rights Under a Labor Agreement," 69 Harv. L. Rev. 601, 604 (1956).

We conclude then that individual employees may be "parties" to a collective bargaining agreement for the

purposes of General Statutes § 52-410 if the collective bargaining agreement so provides. An employee has input in the contract negotiations through the union, has a clear interest in seeing the contract enforced and would have standing to compel arbitration under the statute if accorded that right in the agreement. Thus, if the collective bargaining agreement contains no provision giving employees the right to submit disputes to arbitration, then an employee could not seek relief under the statute. *McCaffrey* v. *United Aircraft Corporation,* supra, 142 (no standing where the contract did not contain a provision permitting employees to request arbitration); *Arsenault* v. *General Electric Co.,* 147 Conn. 130, 133–34, 157 A.2d 918, cert. denied, 364 U.S. 815, 81 S. Ct. 42, 5 L. Ed. 2d 46 (1960) (same); *Housing Authority* v. *Local 1161,* 1 Conn. App. 154, 156–57, 468 A.2d 1251, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984) (same); see also *Vaca* v. *Sipes,* supra, 191; *Black-Clawson Co.* v. *International Assn. of Machinists,* 313 F.2d 179, 184 (2d Cir. 1962); *Norton* v. *Massachusetts Bay Transportation Authority,* 369 Mass. 1, 2, 336 N.E.2d 854 (1975). If the agreement explicitly grants employees the right to seek arbitration, however, the employee would be able to petition the court to enforce that right under General Statutes § 52-410. *Gilden* v. *Singer Mfg. Co.,* 145 Conn. 117, 119, 139 A.2d 611 (1958) (standing where the contract permitted the employee to seek arbitration); see also *Parker* v. *Borock,* 5 N.Y.2d 156, 159, 156 N.E.2d 297 (1959); *Ott* v. *Metropolitan Jockey Club,* 307 N.Y. 696, 697–98, 120 N.E.2d 862 (1954); *Falsetti* v. *Local 2026,* 400 Pa. 145, 169–70, 161 A.2d 882 (1960). To hold otherwise would virtually nullify that part of a collective bargaining agreement granting an individual employee the right to seek arbitration and would defeat our state's policy favoring the private resolution of dis-

putes through arbitration. See *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 488, 439 A.2d 416 (1981).

In this case, the arbitration agreement in effect provided that "an unresolved grievance may be submitted to arbitration by the Union or by the State, but not by an individual employee(s), except that individual employees may submit to arbitration in cases of dismissal, demotion or suspension of not less than five working days." Under the agreement then, the plaintiff was entitled to seek arbitration of his grievance that he was unfairly demoted. He therefore also has standing to file an action pursuant to General Statutes § 52-410 and the trial court did not err in so holding.

The state also argues that the court should not have ordered the state to submit to arbitration because the plaintiff did not prove that he had been demoted and, as a result, did not establish that he was eligible to have his grievance submitted to arbitration. The agreement provided that: "On grievances when the arbitrability has been raised by either party as an issue prior to the actual appointment of an arbitrator, a separate arbitrator shall be appointed at the request of either party to determine the issue of arbitrability." The trial court decided that the factual dispute over whether the plaintiff had been demoted was essentially a question of arbitrability and appointed a separate arbitrator to decide that issue.

It is well established that arbitration is a matter of contract and that parties may agree to have questions concerning the arbitrability of their disputes decided by a separate arbitrator. *A. Sangivanni & Sons* v. *F. M. Floryan & Co.,* 158 Conn. 467, 471, 262 A.2d 159 (1969); *College Plaza, Inc.* v. *Harlaco, Inc.,* 152 Conn. 707, 707–708, 206 A.2d 832 (1965); see *A T & T Technologies, Inc.* v. *Communications Workers of America,*

475 U.S. 643, 648–49, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). If the parties have expressly agreed to submit questions of arbitrability to arbitration, the issue is not one for court determination and should be referred in accordance with the parties' agreement. *State* v. *Connecticut Employees Union Independent,* 184 Conn. 578, 579–80, 440 A.2d 229 (1981); *Board of Education* v. *Frey,* 174 Conn. 578, 580–81, 392 A.2d 466 (1978). In this case the trial court correctly concluded that the plaintiff's allegation concerning his demotion was an issue of fact going to the arbitrability of the grievance. Because the agreement specifically provides that such questions be referred to a separate arbitrator, the trial court did not err in ordering that such an arbitrator be appointed and in ordering that the state submit the issue to that person for resolution.

There is no error.

In this opinion the other justices concurred.