[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION TO COMPEL ARBITRATION
The plaintiff Duchess of Dixwell Avenue, Inc., ("Duchess") brings this action to compel the defendant The Neri Corporation to arbitrate a claim arising out of a construction contract. The problem is that the plaintiff is not a signatory of the contract.
The services of the defendant were retained in 1996 to repair a culvert carrying a stream beneath the surface of the land located at 2425 Dixwell Avenue, Hamden, CT. A restaurant, the Dutchess Restaurant, was in operation on the site. The collapsed culvert ran below the parking area, so that the restaurant remained open but with only limited parking. Bids were invited to repair the culvert and repave the parking lot.
The defendant submitted a written bid for the job on September 30, 1996. On October 7, 1996, a standard American Institute of Architects form contract for the work was entered into with a contract price of $193,400. The contract referred to the obligated parties as the "owner" and the "contractor." There is no dispute that the "contractor" was Neri Corporation, and the contract was signed on behalf of Neri by Kimberly Neri, treasurer, as the authorized agent for Neri.
The "owner" portion of the contract listed the following: the owner's agent Barry I. Steinberg, P. E., the "property owner" Harry Kruger, and the "restaurant owner" Shaun Lavin. The contract is signed "Barry I. Steinberg, P.E., Agent for the Owners." In fact, the restaurant was owned by Dutchess of Dixwell Avenue, Inc., to which no reference was made anywhere in the contract. Shaun Lavin was a 25 % owner of the corporation.
The contract contained an arbitration clause providing that any controversy or claim arising out of or related to the contract was to be settled by arbitration. AIA Contract 6 4.5.1. It also contained a provision obligating the contractor to "maintain the operation of the existing drive-thru between the hours of 11:00 a.m. and 3:00 p. m. each day unless permitted by the Restaurant Owner." CT Page 10682
After the construction was completed, the contractor claimed that additional work had been necessary for which compensation was due. The property owner denied that any further money was owed. The contractor demanded arbitration of Harry Kruger and Shaun Lavin. The demand was filed with the American Arbitration Association ("AAA") on June 9, 1998. On July 9, 1998, Harry Kruger and Shaun Lavin filed an answer with AAA denying the allegations of the claimant. Also included in their papers was a counterclaim on behalf of Duchess of Dixwell Avenue, Inc. Duchess alleged that it was a third party beneficiary of the contract and that it was owed money as a result of the contractor's delay or interference with its business during construction. The contractor opposed the inclusion of the counterclaimant in the arbitration process, and the counterclaimant — the plaintiff here — filed this action to compel the contractor to arbitrate the dispute.
The plaintiff claims that Duchess is a third party beneficiary of the contract and as such is entitled to enforce the contract provisions, including the arbitration clause, against the defendant. The defendant, surprisingly, concedes that this is a correct statement of contract law as it pertains to arbitrations. Rather, the defendant claims that Duchess is not a third party beneficiary of the contract.
As support for the proposition that a third party beneficiary of a contract can enforce an arbitration clause against one of the signatories to the contract, the plaintiff cites Gilden v. SingerManufacturing Co., 145 Conn. 117 (1958). That case does indeed hold that a union member who was a beneficiary of the collective bargaining agreement between his union and Singer could force Singer to arbitrate his claim of wrongful discharge even if the union chose not to do so. Id. From the two-page text of the decision, however, it is clause or from an analysis of third-party beneficiary law. Justice Murphy, who wrote the opinion, soon provided clarification.
In the 1959 term of the Supreme Court, Justice Murphy authored two other decisions that dealt with the ability of a non-signatory to compel arbitration. The first was Arsenault v.General Electric Company, 147 Conn. 130 (1960). Like the plaintiff in Gilden, Mr. Arsenault was an aggrieved union member who challenged his discharge from employment and whose union refused to request arbitration on his behalf. The Supreme Court held CT Page 10683 that, regardless of the plaintiff's status as a third party beneficiary of the contract, without language in the contract that specifically allowed the union member to invoke arbitration, the plaintiff could not do so. The opinion distinguished theArsenault case from the Gilden case, describing the G.E. agreement, "unlike that in Gilden," as containing no language affording an employee the opportunity personally to seek arbitration. Arsenault v. General Electric Company, supra, 134.
Within the same month, the Supreme Court decided McCaffrey v.United Aircraft Corp., 147 Conn. 139 (1960). There the union demanded and obtained arbitration on behalf of its member McCaffrey, who had been fired. The arbitrator found for the company, however, upholding the discharge as proper. McCaffrey, rather than the union, filed an action to vacate the arbitrator's decision. The Supreme Court held that the trial court should have dismissed the application on the grounds that an individual employee was not a party to an arbitration under the United Aircraft contract and thus lacked standing to challenge the outcome of the arbitration. Justice Murphy's opinion in McCaffrey
further distinguished Gilden, supra, explaining the holding of the latter to be one involving the construction of contract language, not one involving the general rights of third party beneficiaries. McCaffrey v. United Aircraft Corporation, supra, 142.
Gilden, properly read, does not stand for the proposition advanced by the plaintiff.
Subsequent Connecticut case law is hardly more definitive. InWesleyan University v. Rissil Construction Associates, Inc.,1 Conn. App. 351 (1980), the court expressly refused to decide whether a third party beneficiary of a contract containing an arbitration provision could compel arbitration. The Wesleyan case and an earlier case arising out of the same construction project,E F Construction Company v. Rissil Construction AssociatesInc., 181 Conn. 317 (1980), illustrate the diffidance with which Connecticut courts have approached this issue. Using the standard AIA contract, Wesleyan hired E F to supervise construction of a new arts center. E F hired Rissil to do the concrete work. Both contracts either contained or incorporated by reference the arbitration provisions that are identical to the ones in the instant case. In the earlier case, the Supreme Court held that Rissil was entitled to compel E F to arbitrate, because the EF/Rissil contract, by its terms, incorporated by reference the CT Page 10684 arbitration provision of the Wesleyan/EF contract. EFConstruction Company v. Rissil Construction Associates. Inc.,
supra, 319-320.
When Rissil later tried to compel arbitration directly with Wesleyan, with whom Rissil had signed no contract, it met with failure. Wesleyan University v. Rissil Construction Associates,Inc., 1 Conn. App. 351 (1980). That case was presented and decided on an agency theory, that is, that E F was acting as an agent of Wesleyan in signing the contract with Rissil, and thus Wesleyan was bound to arbitrate as the principle. The Appellate Court held that the facts did not justify a finding that E F signed the contract as an agent of Wesleyan. As to the issue of whether Rissil was a third party beneficiary of the arbitration provision in the contract between Wesleyan and E F, the Appellate Court noted that that issue had not been raised and briefed on appeal and refused to consider the it.[1] WesleyanUniversity v. Rissil Construction Associates, Inc., supra, 355.
Once viewed as violating public policy, see discussion inParanko v. State, 200 Conn. 51, 54 (1986), clauses compelling arbitration are now favored and routinely enforced by courts. While the court in Wesleyan University v. Rissil ConstructionAssociates, Inc., supra, was able to caution that "arbitration agreements are to be strictly construed and such agreements should not be extended by implication," id 355 the Supreme Court in more recent dicta has stated the following:
 There is accordingly little reason to distinguish between a third party beneficiary's right to enforce an arbitration clause of a contract and a third party beneficiary's right to enforce any other clause of a contract.
Gaudet v. Safeco Insurance Co., 219 Conn. 391, 397, n. 7 (1991).
The most recent scholarly commentary on Connecticut arbitration law agrees, however, that the issue of whether a third party beneficiary can enforce an arbitration clause in a contract against a reluctant signatory is unsettled. Hodgson and Parley, Alternative Dispute Resolution in Connecticut's Courts, § 2.8.4, p. 33 (1998). The trend seems to be to treat the application and enforcement of procedural rights under a contract, relating to remedies and to dispute resolution, in the same way as substantive rights are treated. But in this court's view, that characterization of the state of the law has yet to be CT Page 10685 pronounced in Connecticut. And before a court so holds, the principle deserves a more thorough analysis than it has yet been afforded.
The court declines to adopt the concession of the defendant that were plaintiff found to be a third party beneficiary, arbitration could be compelled. Rather the court accepts the invitation of both sides to determine whether the plaintiff is indeed a third party beneficiary of the contract. The court finds that the plaintiff is not.
The written contract to repair the culvert came about after Carl A. Neri, president of the Neri Corporation, received an inquiry from Barry Steinberg, the engineer who had done the site work. Mr. Neri submitted a bid. He testified that he did a title search before he entered into the written contract to make certain that he was dealing with the record owner of the real property. Mr. Neri testified that he did not know who owned the restaurant and did not care. He knew nothing of the business dealings of the restaurant, and only learned of the corporate status of the establishment after the construction work was substantially complete and the payment dispute arose.
Shaun Lavin, vice-president of Duchess of Dixwell Avenue, Inc., testified that it was of great importance to the restaurant not to have the construction work interfere with the drive-thru lane at midday. He made this fact known to Barry Steinberg. Lavin also testified that the private arrangement between Harry Kruger and Duchess was that each would pay one-half of the cost to rebuild the culvert. Neri had no knowledge that the corporation was contributing to the cost or indeed that such a corporation even existed.
The law in Connecticut, recently reaffirmed in Grigerick v.Sharpe, 247 Conn. 293 (1998), is that in order to determine whether there is a right of action by a third party beneficiary under a contract, it is the intent of the parties to the contract that governs. Id., 312. There must be a determination that both parties intended that the promisor should assume a direct obligation to the third party beneficiary. That intent is found from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. Id.
In Grigerick, the court found error in the trial court's CT Page 10686 instruction that a third party beneficiary could be one who was aforeseeable beneficiary of the contract, as opposed to one who was an intended beneficiary under a contract. The Court reiterated that the focus in contract law is the intention of both parties as expressed through their voluntary exchange of mutual obligations, thus allowing the parties to control through their negotiations the scope of their, contractual duties and obligations. Id., 318.
Furthermore the facts in Grigerick are not dissimilar from the facts of the instant case and are persuasive of a finding here that Duchess was not an intended beneficiary of the Neri contract. Grigerick was a purchaser of land from the seller Lang. Before Grigerick bought the land, lie offered to pay Lang a higher price if Lang would take the necessary steps to have the land approved as a building lot. Lang hired the defendant Gary Sharpe, an engineer, to perform professional services for Lang. Based on Sharpe's work, the town granted approval of the site as a building lot, and Lang sold the property to Grigerick at the higher price. When Grigerick tried to get a permit for a septic system, however, the permit was refused by the new town sanitarian because the land was found to be unsuitable for a septic system. Grigerick sued Sharpe for breach of contract. Gregerick claimed to be a third party beneficiary of Lang's contract with Sharpe.
Responding to special interrogatories, the jury found that while Grigerick was a foreseeable beneficiary of the contract, he was not an intended beneficiary of the contract, a finding that resulted in the Supreme Court remanding and directing that judgment be entered for the defendant on the breach of contract count.
In that case and this, the facts include a landowner entering into a contract for services for his own benefit, although perhaps also intending to benefit another who has or may acquire an interest in that land. But the party supplying the services had no such intention. The fact that an incidental benefit might be realized by a third party is insufficient to support third party beneficiary status. Rather the parties must have intended that the promisor (Neri) would owe a direct obligation to the third party (Duchess of Dixwell Avenue, Inc.). Knapp v. New HavenRoad Construction Co., 150 Conn. 321, 325 (1963); Gateway Companyv. DiNoia, 232 Conn. 223, 231 (1995). CT Page 10687
Absent from the language of the contract and the circumstances attending its making are any indications that Neri Corporation intended to assume a direct obligation to Duchess. Neri was not even aware of the existence of a corporation by that name until this dispute arose. Neri Corporation took steps to make sure that it was signing a contract with at least one individual who possessed adequate security to pay the contract price. There is no evidence that Neri intended any other entity than the landowner to be able to enforce the contract or to benefit from Neri's services.
Arbitration is a creature of contract. Connecticut courts have routinely recognized that, barring an unambiguous finding that the parties agreed to arbitrate, they will not be forced to do so. Scinto v. Sosin, 51 Conn. App. 222, 236 (1998). It is the finding of this court that Neri Corporation did not agree to arbitrate with Duchess either under the express terms of the written contract with Kruger and Lavin or under a third party beneficiary theory.
The plaintiff's application to compel arbitration is denied.
Patty Jenkins Pittman, J.